UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JACK A. SHEETS,<br>    Plaintiff,<br><br>v.<br><br>INTERRA CREDIT UNION,<br>    Defendant. | CASE NO.:_____ |

**PLAINTIFF'S COMPLAINT FOR DAMAGES
AND REQUEST FOR TRIAL BY JURY**

**I. INTRODUCTION**

1. Plaintiff Jack A. Sheets is a resident of Elkhart County, Indiana.

2. Interra is a credit union based in the City of Goshen, Elkhart County, Indiana. Interra is engaged in an industry affecting commerce which had more than Twenty (20) employees for each working day in each of Twenty (20) or more calendar weeks in each calendar year relevant hereto.

3. Sheets brings this lawsuit to address violations of his statutory rights pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA") as well as the Age Discrimination in Employment Act, 29 U.S.C. §621 *et. seq.* (the "ADEA") arising from certain acts, practices, and conduct with respect to his employment with Interra.

## II. JURISDICTION

4. Within 300 days after the unlawful employment practices as alleged herein occurred, Sheets filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Thereafter, he amended his charge of discrimination.

5. In his charge, as amended, Sheets alleged that Interra violated the ADA and the ADEA as follows:

> In January, 2011, Charging Party became ill and began an indefinite medical leave. In May, 2011, the Employer made inquiries concerning Charging Party's medical condition and requested information from Charging Party's physician before allowing him to return to work. The Employer subsequently disclosed this medical information to other persons and otherwise failed to ensure its confidentiality in violation of Americans with Disability Act, 42 U.S.C. §12112. Charging Party did not discover the Employer's violations of the confidentiality provisions of the ADA until on or about August 26, 2013. His administrative deadline is therefore extended under Cada v. Baxter Healthcare Corporation, 920 F.2d 446 (7th Cir. 1990).
>
> On March 21, 2013, Employer terminated Charging Party on account of age and disability in violation of Age Discrimination in Employment Act, 29 U.S.C. §621 and the Americans with Disability Act, 42 U.S.C. §12101 et. seq..

6. The EEOC assumed jurisdiction and processed Sheets' charge of discrimination, as amended.

7. Thereafter on May 28, 2014, the EEOC issued to Sheets, a notice of right to sue, advising him that he had 90 days to file suit. Sheets received the notice of right to sue on June 2, 2014.

8. Sheets has filed the instant action within the aforementioned 90-day right to sue period.

9. Sheets has exhausted his administrative remedies and has complied with all conditions precedent to maintaining this action.

10. The Court has jurisdiction over Sheets' causes of action under 28 U.S.C. §§ 1343, 1331 as they arise under the laws of the United States.

### III. VENUE

11. Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred within the Northern District of Indiana.

12. Because the Northern District of Indiana has no divisional venue requirements under its local rules, Sheets was free to file this lawsuit in any of the divisions. *Graham v. United Parcel Service*, 519 F.Supp.2d 801, 809 (N.D. Ill. 2007). The following facts support Sheets' choice of forum:

(a). On May 2, 2013, approximately 7 weeks after firing Sheets and approximately 2 weeks after learning that Sheets had retained legal counsel to investigate his discharge, Interra issued a press release about Sheets' departure.

(b). On May 2, 2013, the *Truth*, a daily newspaper with the largest readership in Elkhart County, published a news article about the contents of Interra's press release.

(c). Then and now, Interra's membership exceeds 50,000 persons, the vast majority of whom reside in Elkhart County. Ownership of Interra resides in its members.

Interra's press release was its only attempt to inform its members about Sheets' departure in writing.

(d).   In the *Truth* article, Interra's board chairman, David Myers, gave no reason for Sheets' departure, which the *Truth* characterized as occurring under a veil of secrecy; however, Myers implied that it had not been on good terms.

(e).   The Fort Wayne division is only slightly less convenient than the South Bend division for witnesses not employed by Interra.

## IV.   FACTUAL BACKGROUND

13.   Interra, formerly known as Farm Bureau Credit Union, employed Sheets, from January 12, 1976 until March 21, 2013, when it fired him. For the last 26 years of his employment, Sheets served as president and chief executive officer.

14.   Sheets was sixty-two years of age when Interra fired him.

15.   As president and CEO, Sheets was earning annual compensation of a salary and fringe benefits totalling approximately $298,000.00.

16.   In early January 2011, Sheets suffered a right, inter-cerebral hemorrhage, (commonly known as a "bleed"); was hospitalized at Elkhart General Hospital; and began a medical leave. Sheets was under the care of a medical team that included Dr. Joseph Schnittker, M.D., a board certified neurosurgeon, Dr. Jon Markley, M.D., a board certified rehabilitation physician, and Dr. Wendell Rohrer, Ph.D., a neuro-psychologist. Sheets made a full recovery. He suffered no permanent impairment, physical or mental.

On August 16, 2011, the medical team declared Sheets fit to return to work full time without restrictions.

17. When Sheets' bleed occurred, Interra was under contract with Venture International, LLC, a management consulting business based in Hudsonville, Michigan, to provide leadership and problem solving training for its senior management personnel, ("management training contract"). Services under the management training contract were scheduled to end in July, 2012, unless extended by Interra.

18. In mid-April, 2011, Venture's managing partner, Dr. Curt Bechler, Ph.D., approached Sheets and agreed to serve as his "executive coach" to assist him in his return to work. Dr. Bechler enlisted the involvement of other Venture consultants for this project. Dr. Bechler referred to himself and the other consultants as the "VI intervention team."

19. At Dr. Bechler's request, Sheets signed a medical authorization to allow the VI intervention team access to his health care providers and treatment records. With the medical authorization in hand, the VI intervention team sought and obtained Sheets' treatment records and communicated with his doctors by mail, email and in person about Sheets' medical condition. On April 27, 2011, Dr. Bechler met with Dr. Rohrer in person for this purpose.

20. Interra's board of directors approved this arrangement and agreed to pay Venture for the services of the VI intervention team. The board placed their trust in Dr. Bechler and the other members of the VI intervention team to make truthful and accurate reports about Sheets' medical condition.

21. As Venture's management training contract neared its expiration, Venture was informed by Interra that it would not be extended. Dr. Bechler believed that Sheets was responsible for Interra's decision not to extend the management training contract. On April 17, 2012, Dr. Bechler wrote the following statement to the board:

> "The decision to not engage is the prerogative of the CEO; however, it is the recommendation of the VI intervention team that the board and CEO do identify some type of support system for the CEO and management team."

22. On April 17, 2012, Dr. Bechler wrote the following statement to the board:

> "With such serious medical issues faced by the CEO in the past 18 months, cognitive recovery is an ongoing process. The limited observations that we have had, suggest that the CEO would benefit from having additional support as he processes decision-making with his team and works at longer term change within the organization."

23. On May 29, 2012, Dr. Bechler wrote the following statement to the board:

> "[w]hen a brain illness occurs there is always a risk of additional future incidents. You want to proactively establish a plan to hand off the reins in the event of a future problem."

24. On August 17, 2012, David Birky, a member of Interra's senior management, left a recorded voice message about Sheets on Interra's confidential hotline. Venture managed and processed all calls to the hotline under a separate agreement with Interra. Birky understood that any message that he left on the hotline would be reported to the board by Venture but his identity would be kept anonymous. In his hotline message, Birky accused Sheets of having cognitive impairment. Birky stated that Sheets was so cognitively impaired that he was unfit to lead Interra and was an embarrassment to his peers within the credit union industry.

25. On August 18, 2012, Dr. Bechler discussed the hotline message with Birky.

26. On August 20, 2012, Dr. Bechler conveyed Birky's message to the board. Dr. Bechler made the following additional statement in writing to the board:

> "We said at the completion of our work that we did not think there would be ongoing success without additional help and clearly the problems that we foreshadowed are becoming apparent."

27. In October, 2012, the board's chairman, Steven Warner and board member David Myers, approached Birky to discuss allegations that Sheets was too cognitively impaired to lead Interra. Birky repeated the allegations that he had made earlier in the hotline message. Birky also identified another senior manager, Rex Hochstedler, who could corroborate his claims about Sheets' cognitive impairment.

28. In November, 2012, chairman Warner approached Birky to request that he prepare a memorandum detailing his concerns about Sheets. On November 30, 2012,

Birky submitted his memorandum to the board. In it, Birky expressed his frustration with Sheets' inability to understand.

29. In December, 2012, chairman Warner and board member Myers approached Hochstedler about the issue of Sheets' cognitive impairment. At chairman Warner's request, Hochstedler submitted a memorandum to the board on December 20, 2012. In the memorandum, Hochstedler wrote in part:

> Jack has been difficult to work with and has had a difficult time understanding things. When explaining concepts I have had to explain things over and over until he understands or he gets frustrated and often does his own research. When in a meeting with others it is apparent that others understand when Jack does not. This results in extremely time consuming discussions and is quite frustrating for everyone at the meeting.

30. Influenced by the statements of Dr. Bechler, other Venture personnel, Birky, Hochstedler, chairman Warner, and board member Myers, the board came to believe that Sheets had likely sustained severe cognitive impairment and that he was so impaired in his ability to understand, think, and communicate as to be unfit to serve as president and CEO. As a consequence, the board discharged Sheets on March 21, 2013.

## V. ADA CLAIMS

31. Sheets incorporates by reference the allegations contained in paragraphs 1-30 above.

32. During all times referred to herein, Sheets was qualified to perform the essential functions of president and CEO.

33. Interra believed that Sheets had a physical impairment that substantially limits a major life activity, to wit, cognition, the ability to understand, think, and communicate.

34. Sheets had a disability within the meaning of 42 U.S.C. §12102(2) because Interra regarded him as having such a physical impairment and/or having a record of such an impairment.

35. Interra intentionally and willfully discriminated against Sheets on account of disability by firing him.

36. Interra's discriminatory conduct exhibited a willful and/or reckless indifference to Sheets' federally protected right to be free from disability discrimination.

37. As a direct and proximate result of Interra's intentional discrimination, Sheets sustained consequential damages that included loss of income and fringe benefits, impairment of earning capacity, humiliation, emotional distress and mental pain and suffering.

38. Sheets has been required to hire a lawyer to prosecute this action.

39. Between January 4th, 2011 and August 16, 2011, Interra made inquiries to Sheets about his ability to perform job-related functions and by doing so, acquired information about Sheets' medical condition, including his medical history.

40. Interra was obligated to treat this information as confidential and to refrain from disclosing it to other persons under 42 U.S.C.A. §12112(d)(4)(C).

41. Interra disclosed Sheets' medical information to third parties in violation of 42 U.S.C. §12112(d)(3)(B) & (C).

42. As a direct and proximate result of Interra's unlawful disclosure, Sheets sustained consequential damages.

WHEREFORE, Plaintiff Jack A. Sheets prays that this Court enter judgment in his favor against Defendant Interra Credit Union and grant him the maximum relief allowed by law, including, but not limited to punitive and compensatory damages, attorneys' fees, costs of this action, pre-judgment interest and for all other relief proper within the premises.

## VI. ADEA CLAIM

43. Sheets incorporates by reference the allegations contained in paragraphs 1-30 above.

44. Interra intentionally and willfully discharged Sheets on account of age in violation of 29 U.S.C. §623(a)(1).

45. As a direct and proximate result of Interra's intentional discrimination, Sheets sustained consequential damages that included loss of income and fringe benefits, impairment of earning capacity, humiliation, emotional distress and mental pain and suffering.

46. Sheets is entitled to liquidated damages under 29 U.S.C. §626(b) because Interra knew or showed reckless disregard for the matter of whether its conduct was prohibited by the *ADEA*.

WHEREFORE, Plaintiff Jack A. Sheets prays that this Court enter judgment in his favor against Defendant Interra Credit Union and grant him the maximum relief allowed by law, including, but not limited to compensatory damages, attorneys' fees, costs of this action, pre-judgment interest, liquidated damages, and for all other relief proper within the premises.

## JURY DEMAND

Plaintiff, by counsel, demands this cause be tried to a jury.

*/s/ Patrick O'Leary*

Patrick F. O'Leary #10274-20
KeyBank, Suite 210
221 North Main Street
P.O. Box 556
Goshen, IN 46526-0556
Phone: 574-534-9722
Email: pfolearylaw@aol.com

Attorney for Plaintiff